IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION


JAMES WENDELL, JESSICA WENDELL, AND
S.W., A MINOR BY AND THROUGH HIS PARENTS,
JESSICA WENDELL AND JAMES WENDELL                    PLAINTIFFS

VS.                          CIVIL ACTION NO. 5:16-cv-50(DCB)(MTP)

CELLCO PARTNERSHIP D/B/A
VERIZON COMMUNICATIONS, INC.;[1]
TELECOMMUNICATION SYSTEMS, INC.;[2]
AND JOHN DOES 1-10                                   DEFENDANTS


<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the Court on defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon")'s Motion to Compel Arbitration and to Stay Case **(docket entry 7)**. Having carefully considered the motion and response, the memoranda of the parties and the applicable law, and being fully advised in the premises the Court finds as follows:

This case involves wireless telephone services that were provided by defendant Verizon, specifically the services provided on March 10, 2016, during the time that the plaintiffs were being held captive and terrorized in their home by an escaped criminal

---

[1] The proper name of this entity is Cellco Partnership d/b/a Verizon Wireless (see docket entry 8, p. 7).

[2] Defendant Safety and Security Technologies, Inc., was voluntarily dismissed by the plaintiffs on June 23, 2016, and defendant Telecommunications, Inc. was substituted in its place. The plaintiffs' First Amended Complaint (docket entry 15) is identical to their original Complaint (docket entry 1) except for the substitution of parties.

suspect.     The   plaintiffs   allege   that   Verizon   directed   the
plaintiffs' 911 calls to the wrong call center.

The   wireless   services   were   provided   pursuant   to   the   Verizon
Wireless Customer Agreement, which contains a clause requiring "any
dispute"   related   to   the   agreement   or   to   Verizon's   equipment,
products   and   services,   to   be   arbitrated.     Verizon   claims   that
Jessica   Wendell   signed   her   name,   agreeing   to   the   arbitration
provision.     Verizon   further   alleges   that   while   neither   James
Wendell   nor   the   couple's   minor   child   S.W.   signed   the   Customer
Agreement,   they   are   estopped   from   refusing   to   arbitrate   because
they   directly   benefitted   from   the   agreement   by   using   Verizon's
wireless   services   and   by   asserting   claims   which   are   dependent   upon
it.   Verizon   seeks   an   Order   compelling   the   plaintiffs   to   arbitrate
and staying this case pending arbitration.

James and Jessica Wendell have been Verizon's customers since
2012,   receiving   and   using   its   wireless   communications   services   on
their   mobile   phones.     The   Verizon   Wireless   Customer   Agreement
governing   those   services   contains   a   clause   providing   that   "any
dispute that in any way relates to or arises out of this agreement
or  from  any  equipment,  products,  and  services  you  receive  from
[Verizon]" must be submitted to arbitration.   Customer Agreement,
p. 8.  The account owner is Edward Wendell, whom Verizon identifies

2

as "an apparent relative of James."[3]   Jessica Wendell signed the
Customer Agreement as account manager, and specifically agreed to
the terms of the agreement, including its arbitration provision.
Customer Agreement, p. 3.  Although not a signatory, James Wendell,
according to Verizon, "reaped the benefits of the Customer
Agreement by receiving and using wireless services from Verizon for
four years."  Defendant's Brief, p. 2.

On March 10, 2016, the plaintiffs were taken captive by Rafael
McCloud, a capital murder suspect who escaped the Warren County
jail.  The Complaint alleges that during the family's captivity in
their home in Warren County, Mississippi, James Wendell
surreptitiously dialed and reached 911 from his mobile phone on
several occasions, but was unable to talk for fear of
retaliation/reprisal by McCloud.  The plaintiffs' Complaint alleges
that the 911 calls were erroneously routed to the Madison Parish,
Louisiana, 911 call center rather than the Warren County,
Mississippi, call center.  After nearly four hours, the ordeal
ended with McCloud dead and the three plaintiffs alive.

Verizon's Motion seeks to compel arbitration of all the
plaintiffs' claims.  "Arbitration is favored in the law."  Grigson
v. Artists Agency LLC, 210 F.3d 524, 526 (5th Cir. 2000).  Section
4 of the Federal Arbitration Act ("FAA") authorizes a party to

---

[3] This characterization/description is not disputed by the
plaintiffs.

petition for an order compelling arbitration when there has been a "failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration."[4]   9 U.S.C. § 4.   "The FAA expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration."   Washington Mut. Fin. Group, LLC v. Bailey, 364 F.3d 260, 263 (5th Cir. 2004).   Principles of Mississippi state law determine whether the arbitration agreement may be enforced against non-signatories.   Al Rushaid v. Nat'l Oilwell Varco, Inc., 814 F.3d 300, 305 (5th Cir. 2016).

To determine whether to compel arbitration, courts conduct a two-step assessment: (1) whether the parties agreed to arbitrate, and (2) whether a federal statute or policy renders the claims nonarbitrable.   Dealer Computer Servs., Inc. v. Old Colony Motors, Inc., 588 F.3d 884, 886 (5th Cir. 2009).   This second step has also been described as "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims."   Tittle v. Enron Corp., 463 F.3d 410, 418 (5th Cir. 2006)(citing

---

[4] When a party sues on a claim which is subject to arbitration, that constitutes an unequivocal "refusal" to arbitrate under Section 4.   First Family Fin. Servs., Inc. v. Fairley, 173 F. Supp. 2d 565, 572 (S.D. Miss. 2001)("The Court cannot conceive of a more explicit refusal to arbitrate than the bringing of an arbitrable claim in state court that one has contractually agreed to arbitrate.").   See also Mariner Healthcare, Inc. v. Green, 2005 WL 1683554, at *1 (N.D. Miss. Jul. 19, 2005)(filing of lawsuit is explicit refusal to arbitrate); Gen. Guar. Ins. Co. v. New Orleans Gen. Agency, Inc., 427 F.2d 924, 928 (5th Cir. 1970)("The [FAA] is not limited by its terms to cases in which the party moving for a stay has made a pre-suit demand for arbitration.").

<u>Mitsubishi Motors Corp. v. Soler-Chrysler-Plymoth, Inc.</u>, 473 U.S. 614, 628 (1985)).  No party to this action argues that external legal constraints have foreclosed the arbitration of the claims at issue in this case.[5]  Furthermore, the Court is not aware of any external legal constraints that would foreclose arbitration in this case.  Therefore, the Court need only address the first prong of the analysis in order to resolve the arbitrability question.

The first prong (whether the parties agreed to arbitrate) involves two inquiries: (1) "whether a valid agreement to arbitrate exists" and (2) "whether the dispute falls within that agreement."  <u>Id</u>.

In this case, Jessica Wendell agreed to the terms and conditions of the Customer Agreement,[6] including the agreement to

---

[5] The plaintiffs, in their brief, recite that "if the court determines that the parties agreed to arbitrate the dispute, the court must consider 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'"  Plaintiff's Brief, p. 3 (quoting <u>OPE International LP v. Chet Morrison Contractors, Inc.</u>, 258 F.3d 443, 446 (5th Cir. 2001).  However, the plaintiffs make no argument in their brief that any such legal constraints apply to the present case.

[6] Under Section 2 of the FAA, the contract containing the arbitration provision must "involve[] commerce," which the Supreme Court has interpreted as signaling Congress's intention to exercise its entire commerce power.  <u>Allied-Bruce Terminix Cos., Inc. v. Dobson</u>, 513 U.S. 265, 277 (1995).  The Customer Agreement at issue here was entered by citizens of different states and concerns the provision of nationwide wireless communications services.  Therefore, the contract involves commerce, and the FAA thus applies.  <u>Pedcor Mgmt. Co. Welfare Benefit Plan v. Nations Pers. of Texas, Inc.</u>, 343 F.3d 355, 361 n.29 (5th Cir. 2003)(reinsurance contracts involving citizens of different states to be performed in one of those states are contracts involving commerce under FAA); <u>Mississippi Fleet Card, LLC v. Bilstat, Inc.</u>, 175 F. Supp. 2d 894, 898 (S.D. Miss. 2001)(FAA applies to credit card processing agreement entered by citizens of

arbitrate "any dispute" related to either the contract or Verizon's wireless products and services:

> The Federal Arbitration Act applies to this Agreement. Except for small claims court cases that qualify, any dispute that in any way relates to or arises out of this agreement or from any equipment, products, and services you receive from us ... including any disputes you have with our employees or agents, will be resolved by one or more neutral arbitrators before the American Arbitration Association ("AAA") or Better Business Bureau ("BBB").

Customer Agreement, p. 8.  A valid agreement to arbitrate, signed by Jessica Wendell, therefore exists.  As for James Wendell and S.W., although neither of them signed the Customer Agreement, Verizon contends that their claims are also subject to arbitration. State law governs the issue of whether non-signatories to an arbitration agreement may be compelled to arbitrate.  Al Rushaid, 814 F.3d at 305.  In Mississippi, under what is known as "direct-benefit estoppel," non-signatories to contracts containing arbitration clauses are estopped from repudiating arbitration if they, "during the life of the contract, have embraced the contract despite their non-signatory status."  Scruggs v. Wyatt, 60 So.3d 758, 767 (Miss. 2011); accord Mississippi Fleet Card, 175 F. Supp.2d at 903.  Such estoppel makes sense, for it prevents a plaintiff from "'having it both ways.'"  Scruggs, 60 So.3d at 768 (quoting Wash. Mut., 364 F.3d at 268).  "To allow a plaintiff to claim the benefit of the contract and simultaneously avoid its

---

different states).

burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act." Wash. Mut., 364 F.3d at 268 (internal quotation marks and citation omitted).

The Court finds that James Wendell plainly availed himself of the Customer Agreement's benefits despite his non-signatory status. As he admits in the Complaint, he was a customer of, and used wireless communications services provided by, Verizon. Complaint, ¶¶ 26, 51, 59. In fact, he had been a user of Verizon's wireless communications services since 2012, and during the events giving rise to this suit was actively using and seeking the benefits of Verizon's wireless services. Complaint, ¶¶ 1, 15, 19, 31, 39, 45, 48, 52; Ex. A ¶¶ 9–10, Exhs. A-3, A-4, A-5.

In addition, the claims of both James and S.W. are directly dependent on, and require reference to, the Customer Agreement. Absent that contract, neither would have been able to access Verizon's wireless network, and the claims they are asserting would not exist. Ex. A ¶ 11. In other words, by bringing this action, James and S.W. are necessarily proceeding under and relying on the Customer Agreement. Because their claims derive from that contract, they are estopped from attempting to evade its arbitration provision. Scruggs, 60 So. 3d at 771 (compelling non-signatory plaintiff to arbitrate where claims arose from, and could not exist absent, the subject contract); Origen Fin., LLC v. Thompson, 2007 WL 3407391, at *7 (S.D. Miss. Nov. 15, 2007)

(concluding non-signatory should be compelled to arbitrate where his claims derived from the subject contract); see also Blinco v. Green Tree Serv. LLC, 400 F.3d 1308, 1311 (11th Cir. 2005)(compelling non-signatory plaintiff to arbitrate where contract was basis for the lawsuit); Klopfer v. Queens Gap Mountain, LLC, 816 F. Supp.2d 281, 293-94 (W.D.N.C. 2011)(same).

The Court therefore finds that a valid agreement to arbitrate exists.  The second subject of inquiry is whether the plaintiffs' claims fall within that agreement.

The plaintiffs, in their responsive brief, advance various procedural and substantive unconscionability arguments.  Most of these are issues for the arbitrator rather than the Court.  Those which are not are either foreclosed by Mississippi law and/or lack any supporting evidence.  The plaintiffs also assert that their claims are outside the scope of the broad arbitration clause because they sound in tort and do not require interpretation of the Customer Agreement.  However, this contention is contrary to Fifth Circuit case law.  Because the allegations in the plaintiffs' Amended Complaint concern Verizon's provision of wireless services to the plaintiffs under the Customer Agreement, they fall within the scope of the arbitration clause and thus are arbitrable.

In their brief in response, the plaintiffs do not mention or discuss Verizon's direct benefits estoppel argument.  Instead, they discuss Mississippi third-party beneficiary and equitable estoppel

law, neither of which Verizon relies on in its brief. The plaintiffs also cite Solis v. AT&T Mobility LLC, 2015 WL 6739141 (E.D. Mo. 2015) and Cape Flattery Ltd. v. Titan Mar., LLC, 647 F.3d 914, 924 (9th Cir. 2011), neither of which applied Mississippi law or direct benefits estoppel, and neither of which are relevant to this case. The Ninth Circuit case did not involve a non-signatory. The Eastern District of Missouri case did; however, the district court compelled the non-signatory to arbitrate under Missouri third-party beneficiary law. Therefore, the authorities cited by Verizon which compel arbitration are unrebutted. Under Scruggs and the other cases applying Mississippi direct benefits estoppel law, non-signatories James Wendell and S.W., along with signatory Jessica Wendell, must be compelled to arbitrate because they have sought and/or received the benefits of the Customer Agreement by (1) using Verizon's wireless services made available by that contract, and (2) predicating their lawsuit on Verizon's allegedly improper provision of those contractual services.

The plaintiffs also claim that the arbitration agreement is not enforceable because it is procedurally and substantively unconscionable. However, "arbitration agreements are not inherently unconscionable." New S. Fed. Sav. Bank v. Anding, 414 F. Supp. 2d 636, 645 (S.D. Miss. 2005). Under Mississippi law, the following factors are used to assess whether an arbitration provision is procedurally unconscionable: "[1] a lack of knowledge,

[2] lack of voluntariness, [3] inconspicuous print, [4] the use of complex legalistic language, [5] disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms." Smith v. Express Check Advance of Mississippi, LLC, 153 So.3d 601, 609 (Miss. 2014); accord Regions Bank v. Windham, 2016 WL 390071, at *3 (S.D. Miss. Feb. 1, 2016).   The Court shall address each of these five factors in turn.

(1)  Regarding knowledge, the plaintiffs appear to be claiming that Jessica Wendell lacked knowledge in entering the entire Customer Agreement, not merely the arbitration provision contained therein. Docket Entry 21, p. 8.   If so, that is an argument which must be addressed and decided by the arbitrator, not the Court.   Haynsworth v. The Corp., 121 F.3d 956, 965 (5th Cir. 1997)(challenges to entire contract rather than only arbitration provision are a question for arbitrators, not courts); Guy v. Quality Health Servs., Inc., 553 F. Supp. 2d 674, 678 (S.D. Miss. 2008)(same); Russell v. Performance Toyota, Inc., 826 So. 2d 719, 726 (Miss. 2002)(same). Even if the plaintiffs' argument were somehow confined to the arbitration provision, Jessica Wendell did not lack knowledge because "[i]n Mississippi, a person is charged with knowing the contents of any document that [s]he executes." Russell, 826 So. 2d at 726.

(2)  As for voluntariness, the plaintiffs do not appear to argue

that Jessica Wendell did not enter the Customer Agreement voluntarily. However, even if they did, it would likewise be a question for the arbitrator. <u>Haynsworth</u>, 121 F.3d at 965; Guy, 553 F.Supp.2d at 678; <u>Russell</u>, 826 So. 2d at 726.

(3) As for conspicuity, the plaintiffs assert that the arbitration agreement itself was "more difficult to read" because it was in all capital letters and appeared on page 7 of the Customer Agreement. Plaintiffs' Response, pp. 8-9. To the extent that this is an argument that the arbitration agreement is inconspicuous, it fails. Immediately above her signature, in bold, capital letters, Jessica Wendell was informed that she was agreeing to "**SETTLEMENT OF DISPUTES BY ARBITRATION INSTEAD OF JURY TRIALS.**" In contrast to the rest of the Customer Agreement, the arbitration agreement is surrounded by a box and composed in boldface, all-capitalized text in an equal or larger-sized font. The plaintiffs' argument that the arbitration agreement is inconspicuous is simply not plausible. <u>See</u>, <u>e.g.</u>, <u>Green Tree Serv., LLC v. Stephens</u>, 2008 WL 1925174, at *5 (S.D. Miss. Apr. 29, 2008)(arbitration provision on page 5 of 6-page agreement not inconspicuous where in equal font and denoted by all-capital, boldface letters); <u>Richards v. Gibson</u>, 2015 WL 926594, at *4 (S.D. Miss. Mar. 4, 2015)(arbitration provision conspicuous when used same font as rest of documents and a bold, all-capitalized warning statement); <u>Smith</u>, 153 So.3d at 609 (arbitration agreement not inconspicuous when used same font as

rest of contract and written in boldface print).

The only case the plaintiffs cite is not to the contrary.   In East Ford, Inc. v. Taylor, 826 So.2d 709, 716-17 (Miss. 2002), the arbitration agreement was held to be procedurally unconscionable because it appeared in very fine print and regular type font compared to the surrounding text.   By contrast, the arbitration provision in this case is set off in a box and is written in all-capital, boldface font the same size or larger than the text in the rest of the contract.   The plaintiffs' argument therefore is without merit.

(4)  Regarding complexity, the plaintiffs do not argue that the arbitration agreement uses complex, legalistic language, and it does not, being unusually lacking in legalese.

(5)  As for bargaining power, the plaintiffs assert that "the contract signed by Jessica Wendell in this case is a contract of adhesion which [she] signed on a take-it or leave-it basis.   There was no room for negotiation regarding the terms of the agreement.   Jessica Wendell had no bargaining power to change any of the terms of said contract."  Plaintiffs' Response, p. 8.   Again, that is an argument regarding the entire contract, which must be directed to the arbitrator instead of the Court.  Haynsworth, 121 F.3d at 965; Guy, 553 F.Supp.2d at 678; Russell, 826 So. 2d at 726.   Even if it were a question for the Court, the plaintiffs have not adduced any competent evidence (such as an affidavit) that Jessica Wendell

12

lacked bargaining power or was presented with the contract on a "take it or leave it" basis. Instead, the plaintiffs offer only unsubstantiated assertions which do not suffice. See White v. Goodyear Tire, 96 F.3d 1444, 1996 WL 512054, at *3 (5th Cir. 1996) (unpublished)(mere assertions by counsel are not competent evidence); Fox v. Mississippi, 2012 WL 3154971, at *6 (S.D. Miss. Aug. 2, 2012)(same).

Furthermore, even if there were some evidence of disparity in bargaining power between Jessica Wendell and Verizon, that would not, standing alone, demonstrate procedural unconscionability. See, e.g., Smith, 153 So.3d at 610. "The fact that an arbitration agreement is included in a contract of adhesion renders the agreement procedurally unconscionable only where the stronger party's terms are unnegotiable and the weaker party is prevented by market facts, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all." Pittman v. Joe K. Pittman Co., LLC, 2016 WL 1050299, at *4 (S.D. Miss. Mar. 16, 2016). The plaintiffs have not presented any evidence of such "market facts" which would have prevented them from contracting with other wireless communications service providers.

Regarding opportunity to read and inquire, the plaintiffs do not argue that Jessica Wendell lacked the opportunity to read the terms of the Customer Agreement or to inquire about its terms. But

13

even if they had, that would also be an issue reserved for the arbitrator.  Haynsworth, 121 F.3d at 965; Guy, 553 F.Supp.2d at 678; Russell, 826 So. 2d at 726.

Based on the foregoing factors, the Court finds that the arbitration agreement is not procedurally unconscionable under Mississippi law.

Regarding substantive unconscionability, the plaintiffs make two arguments.  The first is that "the contract in this case is one of adhesion."  Plaintiffs' Response, p. 10.  However, that is an argument which goes to the Customer Agreement as a whole, not merely the arbitration provision.  The issue is therefore reserved for the arbitrator.  Haynsworth, 121 F.3d at 965; Guy, 553 F.Supp. 2d at 678; Russell, 826 So.2d at 726.  Even if it were not, the plaintiffs have not come forward with any evidence that the Customer Agreement was presented on a "take it or leave it" basis. Thus, they have not proved that the contract was one of adhesion. Smith, 153 So.3d at 608 (plaintiff presented no evidence contract was presented on "take it or leave it" basis); see also White, 96 F.3d 1444, 1996 WL 512054, at *3 (unpublished)(mere assertions by counsel are not competent evidence); Fox, 2012 WL 3154971, at *6 (same).  And even if the plaintiffs had shown adhesion, "finding a contract to be one of adhesion does not automatically mean that the contract or any provision thereof is substantively unconscionable." Smith, 153 So.3d at 608.

The plaintiffs also assert that, even though the arbitration clause "appears to be even handed and fair" by limiting both parties to either small claims court or arbitration, in practice it is unfair because, unlike Verizon, the plaintiffs "would seldom need to sue Verizon for a small debt" in small claims court. Plaintiffs' Response, p. 11.   Again, the plaintiffs cite no evidence in support of their assertion; rather, they rely solely on the unsubstantiated suppositions of their counsel.   See White, 1996 WL 512054, at *3 (unpublished); Fox, 2012 WL 3154971, at *6.

Furthermore, even if the plaintiffs came forward with evidentiary support, their argument would be rejected.   In Johnson v. Shady Lawn, LLC, 2015 WL 11123306, at *4 (S.D. Miss. Jan. 6, 2015), the arbitration agreement allowed both parties to go to small claims court for claims valued at less than $25,000, but required arbitration for claims exceeding that amount.   District Judge William H. Barbour, Jr. rejected the plaintiff's argument that the small claims court provision was substantively unconscionable, reasoning that "it applies equally to both parties."   Id.   Other courts have held similarly when confronted with arbitration agreements which give both parties equal rights to pursue small claims in small claims court.   See, e.g., Jenkins v. First Am. Cash Advance of Georgia, LLC, 400 F.3d 868, 879 (11th Cir. 2005); Golden Gate Nat'l Senior Care, LLC v. Sulpizio, 2016 WL 1271333, at *4 (M.D. Pa. Mar. 31, 2016); Williams v. TCF Nat'l

Bank, 2013 WL 708123, at *11 (N.D. Ill. Feb. 26, 2013); Bischoff v.
DirecTV, Inc., 180 F. Supp. 2d 1097, 1110 (C.D. Cal. 2002). As the
Eleventh Circuit noted in Jenkins, "[b]y including a provision that
offers access to such [small claims] tribunals, the Arbitration
Agreements at issue here merely complied with the AAA's Consumer
Due Process Protocol[,]" which counsels "that consumer arbitration
agreements, like those at issue here, should offer all parties the
option of seeking adjudication in a small claims tribunal." 400
F.3d at 879. This further undermines the plaintiffs' argument that
the small-claims provision is lopsided in favor of Verizon.[7] The
arbitration provision is therefore not substantively unconscionable
under Mississippi law. The Court therefore finds that the
Arbitration Agreement is neither procedurally nor substantively
unconscionable.

   The plaintiffs' claims also fall squarely within the scope of
the arbitration agreement. "When determining whether a dispute is

---

[7] The plaintiffs also cite Pitts v. Watkins, 905 So. 2d 553
(Miss. 2005), in which the Mississippi Supreme Court held an
arbitration clause to be substantively unconscionable. However, the
arbitration provision in Pitts allowed the defendant to go to court
but not the plaintiff. In contrast, the arbitration agreement sub
judice treats Jessica Wendell and Verizon exactly the same with
respect to arbitration and small claims court options. Customer
Agreement, pp. 11-12. In any event, other cases make clear that
"mutuality of obligation is not required" for an arbitration provision
to be held enforceable. See, e.g., Sawyers v. Herrin-Gear Chevrolet
Co., 26 So. 3d 1026, 1035 (Miss. 2010)(arbitration agreement with an
exception permitting car dealer to sue for repossession not
substantively unconscionable); Daniels v. Virginia Coll. at Jackson,
478 F. App'x 892, 893 (5th Cir. 2012)(exception to arbitration clauses
allowing school to seek limited injunctive relief not substantively
unconscionable).

covered by the scope of an arbitration agreement, the Supreme Court
has held that 'any doubts concerning the scope of arbitrable issues
should be resolved in favor of arbitration.'"   Safer v. Nelson Fin.
Group., Inc., 422 F.3d 289, 294 (5th Cir. 2005)(quoting Moses H.
Cone Mem'l Hosp. v. Mercury Constr. Co., 460 U.S. 1, 24-25 (1983)).
"[A]rbitration should not be denied unless it can be said with
positive assurance that the arbitration clause is not susceptible
of an interpretation which would cover the dispute at issue."
Safer, 422 F.3d at 294 (internal quotation marks and citation
omitted).

    The arbitration clause in the Customer Agreement at issue in
this case provides that "The Federal Arbitration Act applies to
this Agreement, except for small claims court cases that qualify,
any dispute that in any way relates to or arises out of this
Agreement or from any equipment, products and services you receive
from [Verizon Wireless] ...."   Customer Agreement, p. 12.   The
plaintiffs' arguments that their claims sound in tort rather than
contract and do not require an interpretation of the Customer
Agreement are misplaced.   In Smith/Enron Cogeneration Ltd. P'ship,
Inc. v. Smith Cogeneration Intern, Inc., 198 F.3d 88 (2nd Cir.
1999), the Second Circuit held:

        We have stated previously that in light of "the strong
        federal policy in favor of arbitration, the existence of
        a broad agreement to arbitrate creates a presumption of
        arbitrability which is only overcome if it may be said
        with positive assurance that the arbitration clause is
        not susceptible of an interpretation that covers the

17

asserted dispute.  Doubts should be resolved in favor of coverage." <u>WorldCrisa Corp. v. Armstrong</u>, 129 F.3d 71, 74 (2nd Cir. 1997)(citations and internal quotation marks omitted).  We stated in <u>Genesco [v. T. Kakiuchi & Co.</u>, 815 F.2d 840, 845-46 (2nd Cir.1987)] that when we consider "whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint rather than the legal causes of action asserted.  If the allegations underlying the claims 'touch matters' covered by the parties' ... agreements, then those claims must be arbitrated, whatever the legal labels attached to them." (citation omitted).

<u>Smith/Enron</u>, 198 F.3d at 99.  Thus, under the broad arbitration clause in the case <u>sub judice</u>, claims are arbitrable as long as they "touch matters" covered by the arbitration agreement.  <u>See Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.</u>, 372 F.3d 339, 344 (5th Cir. 2004)(quoting <u>Smith/Enron</u>, 198 F.3d at 99); <u>see also</u> <u>Hudson v. ConAgra Poultry Co.</u>, 484 F.3d 496, 499-500 (8th Cir. 2007)("Under the Federal Arbitration Act, we generally construe broad language in a contractual arbitration provision to include tort claims arising from the contractual relationship, and we compel arbitration of such claims.").

The cases cited by the plaintiffs, <u>Rogers-Dabbs Chevrolet-Hummer v. Blakeney</u>, 950 So.2d 170 (Miss. 2007), and <u>Smith v. Captain D's, LLC</u>, 963 So.2d 1116 (Miss. 2007), both rendered by the Mississippi Supreme Court, are inapposite because it is federal law, not state law, that applies to determine whether a dispute falls within the scope of an arbitration provision.  <u>McKee v. Home Buyers Warranty Corp. II</u>, 45 F.3d 981, 985 (5th Cir. 1995); <u>Diaz v.</u>

18

CMH Homes, Inc., 2015 WL 11120332, at *3 (S.D. Miss. Sept. 30,
2015)("the FAA directs courts to look to federal law to determine
the scope of an arbitration clause"); Speetjens v. Larson, 401
F.Supp.2d 600, 609 (S.D. Miss. 2005)("The issue of arbitrability is
governed by federal law, not state law."). In addition, both cases
dealt with matters (fraud in Rogers-Dabbs and sexual assault by an
employee in Smith v. Captain D's) which were held to be unrelated
to the contracts at issue. By contrast, the present case focuses
on the provision of wireless services, which is precisely the
subject of the Customer Agreement between the parties.

The Customer Agreement deals with Verizon's provision of
wireless communications services, including 911 service, and the
plaintiffs' lawsuit is premised on Verizon's allegedly improper
provision of those services to the plaintiffs. Accordingly, the
dispute between the parties "relates to or arises out of [the
Customer Agreement] or from any equipment, products, and services"
provided by Verizon. Customer Agreement, p. 8. Thus, the
allegations of the plaintiffs' Complaint fall within the scope of
the arbitration clause and are arbitrable.

In its Motion, Verizon seeks an order compelling the
plaintiffs to arbitrate their claims. The First Amended Complaint
names an additional defendant, Telecommunication Systems, Inc.
("TSI"). TSI has not moved to compel arbitration of the
plaintiffs' claims against it; however, in its Answer to the First

Amended Complaint, TSI raises a defense that "[t]his dispute is subject to an arbitration agreement,[8] and Defendant demands this matter be stayed and referred to arbitration."

To the extent that Verizon requests a stay of any nonarbitrable claims, 9 U.S.C. § 3 provides in relevant part:

> If any suit or proceeding be brought ... upon any issue referable to arbitration ... the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration ..., shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the [arbitration] agreement ....

Under the plain language of § 3, Verizon, as a signatory to the Customer Agreement, is clearly entitled to arbitration.

Regarding the right to a stay requested by TSI as a non-signatory to the Customer Agreement, the Court notes that the stay provisions of § 3 "usually [apply] only to the parties to an arbitration agreement." Waste Mgmt., Inc., 372 F.3d at 342 (citation omitted). However, the Fifth Circuit has recognized that "[t]he clarity of this rule denying the applicability of the mandatory stay provision to non-parties has been muddied" by recent Fifth Circuit case law. Adams v. Georgia Gulf Corp., 237 F.3d 538, 540 (5th Cir. 2001).

In Waste Mgmt., Inc., the Fifth Circuit held, consistent with the trend of allowing a non-signatory to invoke the stay provisions

---

[8] Presumably the Customer Agreement between Verizon and Jessica Wendell.

20

of § 3 under certain circumstances, that the language of § 3 allows for "situation[s] where a non-signatory requests a stay of litigation on an issue covered by an arbitration agreement." 372 F.3d at 342.   Factors to consider in determining whether a nonsignatory has the right to invoke a stay under § 3 are: "[1] the similarity of the operative facts, [2] the inseparability of claims, and [3] the effect of the litigation on the arbitration." Id. at 344.

In this case, the plaintiffs' First Amended Complaint refers to defendants Verizon and TSI collectively in virtually all the substantive counts; and TSI, in its Answer, admits that it, like Verizon, provided wireless communications services to the plaintiffs.  Answer, ¶¶ 26, 51.  The Court finds that the Waste Mgmt., Inc. factors justify a stay of this case pending arbitration.

Accordingly,

IT IS HEREBY ORDERED that defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon")'s Motion to Compel Arbitration and to Stay Case **(docket entry 7)** is GRANTED;

FURTHER ORDERED that the Clerk of Court shall ADMINISTRATIVELY CLOSE this case pending arbitration;

FURTHER ORDERED that defendant Verizon and the plaintiffs shall submit their dispute to arbitration in keeping with the Customer Agreement;

FURTHER ORDERED that the parties in arbitration shall file a written report reflecting the status of the arbitral proceedings two months after the date of entry of this Order and every following two months until the arbitral proceedings are concluded, at which time they shall promptly notify the Court.

SO ORDERED, this the 14th day of November, 2016.


/s/ David Bramlette
UNITED STATES DISTRICT JUDGE